UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

```
                              )
RONNIE DAVIS,                 )
                              )
        Plaintiff,            )
                              )
v.                            )        Case No.: 4:16-cv-18
                              )
SAMUEL I. WHITE, P.C.,        )
                              )
        Defendant.            )
                              )
```

## OPINION AND ORDER

This case presents a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. §§ 1692 *et seq.* Before the Court is Defendant Samuel I. White, P.C.'s ("Defendant")

Renewed Motion to Dismiss the First Amended Complaint, or in the Alternative, Motion for

Summary Judgment and an accompanying memorandum, filed on August 11, 2017. ECF No.

43. Plaintiff Ronnie Davis ("Plaintiff") was required to file his Response by August 25, 2017.[1]

On September 7, 2017 (thirteen days after the expiration of the August 25, 2017 deadline for

timely filing) Plaintiff filed a "Consent Motion for Leave to File Out of Time Response to

Defendant's Motion to Dismiss or for Summary Judgment," ECF No. 45, and Brief in Support,

ECF No. 46. On September 8, 2017, Plaintiff filed his "Opposition to Defendant's Motion to

Dismiss or for Summary Judgment" and supporting exhibits.[2] ECF Nos. 47-58. On September

13, 2017 Defendant filed its Reply to Plaintiff's Opposition. ECF No. 59. On September 27,

2017, the Court granted Plaintiff's Consent Motion, and directed the Clerk to accept Plaintiff's

---

[1] *See* E.D. Va. Local Civ. R. 7(F)(1) ("Unless otherwise directed by the Court, the opposing party shall file a
response brief and such supporting documents as are appropriate, within fourteen (14) calendar days after service.")
[2] ECF Nos. 45 and 46 were filed at 11:42 p.m. and 11:43 p.m., respectively, on September 7, and ECF Nos. 47-58
were filed starting at 12:01 p.m. on September 8.

Opposition for filing. ECF No. 60. Accordingly, the Motion is ripe for decision. The undersigned makes this ruling without a hearing pursuant to Fed. R. Civ. P. 78(b) and E.D. Va. Local Civ. R. 7(J). For the following reasons, Defendant's Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 43) is **GRANTED.**

## I. FACTUAL/PROCEDURAL BACKGROUND

This matter concerns real property formerly owned by Plaintiff, located at 5614 Fairfield Lane, in Hayes, Gloucester County, Virginia (hereinafter "the Property"). On or about November 25, 1998, Plaintiff was honorably discharged from the United States Army.[3] Plaintiff's military service allowed him to obtain refinancing for his residential mortgage on the Property through the Veterans Administration.[4] As a result of this refinancing, Plaintiff executed a Promissory Note in favor of Bank of America (the original creditor), on or about December 10, 2012 in the amount of Two Hundred and Forty Four Thousand, One Hundred and Five Dollars ($244,105.00). ECF No. 12 at 5, ¶ 11; ECF No. 56 (Promissory Note).[5] The same day (December 10, 2012), Plaintiff executed an accompanying Deed of Trust, which identified Bank of America as the Lender and Defendant as the Trustee. ECF No. 12 at 5, ¶ 11; ECF No. 13, attach. 6 (Exhibit E). Plaintiff concedes that he defaulted on the loan in October 2013, when he failed to make payments as they came due on October 1, 2013 and November 1, 2013. ECF No. 12 at 6, ¶ 13. Plaintiff made no further payments after his September 2013 payment. Plaintiff was advised of the default status by letter dated November 15, 2013, wherein Bank of America advised Plaintiff that if he failed to cure the default amount (plus additional regular monthly payment(s) and late fees) by December 25, 2013, then Bank of America would accelerate the

---

[3] United States District Court for the Northern District of Georgia, Atlanta Division Case No. 1:14-cv-02679-CAP ("Georgia Action"), ECF No. 25 at 3, ¶ 4.
[4] Case No. 1:14-cv-02679-CAP ("Georgia Action"), ECF No. 25 at 5, ¶ 15.
[5] *See also* Case No. 1:14-cv-02679-CAP ("Georgia Action"), ECF No. 25 at 3, ¶ 4.

loan payments, causing the full amount to become due and payable in full. ECF No. 12, attach. 2 (Exhibit B). By letter dated December 12, 2013, PennyMac Loan Services, LLC ("PennyMac") notified Plaintiff that effective December 3, 2013, servicing of Plaintiff's mortgage loan transferred from Bank of America to PennyMac. This December 12, 2013 letter specifically advised

> We are pleased to inform you that the servicing of your mortgage loan has transferred from Bank of America to PennyMac Loan Services, LLC ("PennyMac") effective December 03, 2013. The transfer of servicing does not affect any other terms or conditions of the mortgage documents, other than terms directly related to the servicing of your loan.

Case No. 1:14-cv-02679-CAP ("Georgia Action"), ECF No. 25, attach. 2 (Exhibit B).[6] On or about April 21, 2014, Defendant sent a letter to Plaintiff, wherein Defendant asserted that it had been instructed to initiate foreclosure of the mortgage securing the Property. ECF No. 12, attach. 1 (Exhibit A). Defendant's letter further stated that "as of April 11, 2014 the amount of the debt is $248,133.45" and that "[t]he creditor to whom the debt is owed is PennyMac Loan Services, LLC," ECF No. 12, attach. 1 (Exhibit A), and that Defendant was providing such information pursuant to the Fair Debt Collection Practices Act, ECF No. 12, attach. 1 (Exhibit A). This April 21, 2014 letter is the complained of correspondence upon which Plaintiff's suit arises. Non-judicial foreclosure of the property was effectuated in the Circuit Court for Gloucester County, Virginia on or about August 25, 2014. ECF No. 12 at 14, ¶ 42. *See also* ECF No. 43 at 5 ("On or about March 16, 2015, the Commissioner of Accounts advised the Gloucester County Circuit Court that he had stated his account as to the Property and the foreclosure sale was approved.").

On August 19, 2014, Plaintiff, by and through counsel, filed suit against PennyMac in the Atlanta Division of the United States District Court for the District of Georgia in Case No. 1:14-

---

[6] *See* Part III.C.2(c)(ii), *infra* for a detailed discussion of the significance of this December 12, 2013 letter.

cv-02679-CAP (hereinafter "Georgia Action").[7] Therein, Plaintiff asserted a personal suit and a class action suit against PennyMac for alleged violations of the Fair Debt Collection Practice Act. Eventually, the Georgia Action was dismissed on or about February 27, 2015 pursuant to a "Joint Stipulation of Dismissal with Prejudice" wherein Plaintiff stipulated to the dismissal with prejudice of all claims that were made or that "could have been made" by both Plaintiff individually and on behalf of the putative class members.[8] The parties entered into a Settlement Agreement in connection with this stipulated dismissal. Plaintiff provided a heavily redacted copy of this Settlement Agreement as an exhibit in support of his Opposition to Defendant's Motion to Dismiss. ECF No. 55. Of the limited portions that are not subject to redaction, one provision states "[a]ny and all claims that [Plaintiff] may have against [Defendant], the Dillon Law Group, PLC, and Vendor Resource Management are expressly retained." ECF No. 55 at 6, ¶ V.

On April 18, 2015[9], Plaintiff filed suit against Defendant in the United States District Court for the District of Maryland in Case No. 1:15-cv-01108 (hereinafter "Maryland Action"). ECF No. 1. Defendant filed a Motion to Dismiss for Failure to State a Claim on May 12, 2015.

---

[7] Although Defendant refers to the Georgia Action repeatedly in support of its argument that the instant suit is barred by collateral estoppel, Defendant failed to identify the case by its name or include any of the operative filings, (specifically the Joint Stipulation) within the instant Motion to Dismiss (ECF No. 43). However, the Court notes that Defendant had previously included these attachments and the case number of the Georgia Action in support of its first (and incorporated and renewed) Motion to Dismiss while the action was still pending in the Maryland court. *See* ECF. No. 13, attachs. 2-3. Additionally, the Memorandum Opinion of the Maryland District Court (the Honorable Richard D. Bennett) identifies the Joint Stipulation as a matter of public record, concluding that when reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "may properly take judicial notice of matters of public record . . ." *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). Accordingly, this Court will follow suit and take judicial notice of filings in both the Georgia Action and the Maryland Action.
[8] Case No. 1:14-cv-02679-CAP, ECF No. 26 at 1.
[9] Because Defendant sent the complained of communication to Plaintiff on or about April 21, 2014, Plaintiff met the one year statute of limitations by three (3) days. *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.").

4

ECF No. 11. In response, Plaintiff filed an Amended Complaint on June 5, 2015. ECF No. 12.[10] The Amended Complaint (hereinafter "the Complaint") consists of two (2) counts. Count I alleges that Defendant committed various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* against Plaintiff individually, by sending Plaintiff a written communication which misstated the amount of a debt owed, misidentified the creditor, and impermissibly threatened to initiate non-judicial foreclosure when no such right to possession existed; by actually foreclosing on the Property; and by recording a "void foreclosure deed" on the Property. *See* ECF No. 12 at ¶¶ 31-44. Count II alleges what Plaintiff describes as "Class Allegations" asserted on behalf of "Plaintiff and others similarly situated to him" pursuant to 15 U.S.C. § 1692k(a)(2)(B) for alleged violations of FDCPA by sending communications that misstated the amount of debt owed and misidentified the creditor. ECF No. 12 at ¶¶ 45-59. Defendant filed a Second Motion to Dismiss for Failure to State a Claim or to Strike First Amended Complaint on June 18, 2015. ECF No. 13. Ultimately, the Maryland Action was disposed of by the Honorable Richard D. Bennett's ("Judge Bennett") March 24, 2016 Memorandum Order and Opinion. ECF No. 23. Therein, Judge Bennett declined to issue a substantive ruling on the merits of Defendant's Second Motion to Dismiss (ECF No. 13), but ordered a transfer of venue to the United States Court for the Eastern District of Virginia, and instructed Defendant to refile its Motion to Dismiss.

On or about March 24, 2016, the case was officially transferred to the Newport News division of the United States District Court for the Eastern District of Virginia, pursuant to Judge Bennett's Memorandum Order and Opinion. ECF No. 25. After several months of confusion as to the identity of Plaintiff's counsel, Mr. Harlan Miller, Plaintiff's former counsel in both the Maryland and Georgia Actions, managed to find local counsel with whom to associate, and was

---

[10] This First Amended Complaint is the operative Complaint for the purposes of the instant Motion.

5

admitted to this Court *pro hac vice*. ECF Nos. 26-33. On July 19, 2016, Defendant consented to Magistrate Judge jurisdiction. ECF No. 34. On April 10, 2017, Plaintiff also consented to the same. ECF No. 38. Pursuant to the Rule 16(b) Scheduling Order (ECF No. 40), a jury trial was scheduled for November 8, 2017, however, upon Defendant's filing of the instant Motion in August that trial date was removed from the calendar with the proviso that it could be rescheduled pending resolution of the Motion. ECF No. 60.

On August 11, 2017, Defendant filed a Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. ECF No. 43. Therein, Defendant renewed and incorporated the arguments made in its previously filed Motion to Dismiss (ECF No. 13) and contends that Plaintiff's suit should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1), Rule 12(b)(6), or alternatively, as a matter of law pursuant to Rule 56. In support of this argument, Defendant contends that it is entitled to judgment as a matter of law for several reasons, including: the absence of a justiciable case or controversy; the bar imposed by collateral estoppel and issue preclusion; and Plaintiff's failure to establish a claim under the Fair Debt Collection Practices Act. Additionally, Defendant argues that Count II's request for class action and class certification status is without basis and unwarranted. This Renewed Motion is the subject of the instant Opinion and Order.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss – Lack of Subject Matter Jurisdiction

"As 'subject-matter jurisdiction is a necessary prerequisite to any merits decision by a federal court,' the [C]ourt must first address the Defendant's argument under Rule 12(b)(1)." *Sullivan v. Perdue Farms, Inc.*, 133 F. Supp. 3d 828, 833 (E.D. Va. 2015) (quoting *Constantine v. Rectors & Visitors of Geo. Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005) (citing *Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 89–101 (1998))). A defendant may contest a court's subject matter jurisdiction in two ways under Fed. R. Civ. P. 12(b)(1). "First, a defendant may attack the complaint on its face, when the complaint 'fails to allege facts upon which subject matter jurisdiction can be based.' *Wynne v. I.C. Sys., Inc.*, 124 F. Supp. 3d 734, 738-39 (E.D. Va. 2015) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)). In that event, the well-pleaded facts asserted in the complaint are assumed to be true and are construed in the light most favorable to the plaintiff. *Wynne v. I.C. Sys., Inc.*, 124 F. Supp. 3d 734, 739 (E.D. Va. 2015); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). Alternatively, a defendant may challenge the existence of subject matter jurisdiction in fact, apart from anything alleged in the pleadings, and may proffer evidence outside the pleadings without converting the motion into one for summary judgment. *Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) ("In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.").

Regardless of whether the defendant challenges subject matter jurisdiction based on an attack on the complaint on its face, or an attack on the existence of subject matter jurisdiction apart from the pleadings, "the burden is on plaintiffs, as the party asserting jurisdiction, to prove that federal jurisdiction is proper." *Int'l Longshoremen's Ass'n,* 914 F. Supp. at 1338 (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)). Moreover, the plaintiff must prove that subject matter jurisdiction exists by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav,*

7

555 F.3d 337, 347–48 (4th Cir. 2009).

**B. Motion to Dismiss – Failure to State a Claim**

A motion filed under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. *Jordan v. Alternative Resources Corp.,* 458 F.3d 332, 338 (4th Cir. 2006). In considering this motion, the court must assume that the facts alleged are true, and view them in the light most favorable to the plaintiff. *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To be sufficient under Rule 8, the pleading must meet two basic requirements: it must contain sufficient factual allegations and those allegations must be plausible. *Adiscov, LLC v. Autonomy Corp.,* 762 F. Supp. 2d 826, 829 (E.D. Va. 2011) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)). First, sufficient factual allegations include "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do;" rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Second, to "nudge[] their claims across the line from conceivable to plausible," *id.* at 570, "plaintiff[s] [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, to achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly,* 550 U.S. at 557. Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.*

Consequently, when considering a motion to dismiss, only those allegations which are factually plausible are "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (noting that legal conclusions must be supported by factual allegations). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

Additionally, Fed. R. Civ. P. 12(d) provides that if, on a motion brought under Fed. R. Civ. P. 12(b)(6), matters outside the pleadings are presented to the court, the motion must be treated as one for summary judgment under Fed. R. Civ. P. 56. However, an exception is made for authentic documents which are referred to in the complaint and upon which the plaintiff relies in bringing the action, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic. *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

### C. Motion for Summary Judgment

The entry of summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To defeat a motion for summary judgment, the nonmoving party must go beyond the

facts alleged in the pleadings and instead rely upon affidavits, depositions, or other evidence to show a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Conclusory statements, without specific evidentiary support, are insufficient. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998). Rather, "there must be evidence on which the jury could reasonably find for the [party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A party opposing summary judgment must present more than "a scintilla of evidence." *Id.* at 251.

Importantly, under Rule 56 the evidence proffered, either in support of or in opposition to, the summary judgment motion, must be admissible. *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993); *see also, Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) *holding modified by Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420 (4th Cir. 2000) (holding that, in opposing a defendant's motion for summary judgment, "[t]he summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.").

## III. DISCUSSION/ANALYSIS

### A. Subject Matter Jurisdiction (Rule 12(b)(1))

Because "[a]nalysis necessarily begins with the question of subject matter jurisdiction, for absent such jurisdiction there is no power to adjudicate any issues," the Court will commence its disposition of the Motion with arguments made pursuant to Fed. R. Civ. P. 12(b)(1). *Biber v. Pioneer Credit Recovery*, Inc., 229 F. Supp. 3d 457, 464 (E.D. Va. 2017). Under the United States Constitution, the jurisdiction of federal courts is limited to the adjudication of actual controversies brought by plaintiffs with standing. U.S. Const., art. III, § 2. Defendant argues that Plaintiff lacks standing and therefore, the Court is divested of subject matter jurisdiction. It

is axiomatic that subject-matter jurisdiction is a prerequisite to a federal court's exercise of jurisdiction in any case. *See Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) ("It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court."). Defendant contends that because Plaintiff did not originally allege damages in his first Complaint, and only alleged general damages after being alerted to the deficiency via Defendant's First Motion to Dismiss, the damages now alleged in the operative complaint are a fabrication and fail to meet the requirement of an actual injury subject to redress. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In support of this fabrication charge, Defendant cites as an example the fact that Plaintiff seeks recovery of relocation fees and eviction costs, yet the subject Property address and the alleged present address of Plaintiff (as reflected in the docket entries) are the same, leading to the conclusion that Plaintiff (despite having been in default since October 2013 and foreclosure having apparently been effectuated) continues to reside in the Property. Additionally, Defendant argues that because the state foreclosure proceedings are long since finalized, Plaintiff has been fully divested of any right of redemption to the subject Property, rendering the issue moot and leaving no active case in controversy, thus depriving this Court of subject matter jurisdiction. *See In re Rivada Networks*, 230 F. Supp. 3d 467, 471 (E.D. Va. 2017) ("A case is moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (quoting *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)).

Defendant's arguments are misplaced. The fact that an amended complaint includes revisions that remedy errors raised by opposing counsel in a Motion to Dismiss does not automatically lead to the conclusion that such amendments are the product of fabrications. While that is certainly a possibility, in this case, an equally likely explanation is Plaintiff

11

counsel's oversight. Moreover, Defendant's argument ignores the deferential standard of review this Court must apply to Plaintiff's claims when considering a Rule 12(b)(1) Motion to Dismiss based on a Defendant's attack on the complaint on its face, where the well-pleaded facts asserted in the complaint are assumed to be true and are construed in the light most favorable to the plaintiff. *Wynne v. I.C. Sys., Inc.*, 124 F. Supp. 3d 734, 739 (E.D. Va. 2015); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). Here, Defendant attacks the complaint on its face by asserting that it fails to allege facts upon which federal subject matter jurisdiction could be based. The Court disagrees. "In this scenario, a court must assume the veracity of claims by the plaintiff." *Medtronic, Inc. v. Lee*, 151 F. Supp. 3d 665, 671 (E.D. Va. 2016) (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982))) (internal citations omitted). Assuming the truth of Plaintiff's factual allegations (as it must), the Court finds that Plaintiff has established that this Court possesses jurisdiction over Plaintiff's timely filed private cause of action, which is specifically authorized by federal law. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.").

Defendant's argument also ignores the distinction between what allegedly transpired in the context of the state court proceeding and the current action, as well as the legislative purpose of the statute under which the case is brought. While the disposition of the non-judicial foreclosure proceeding in state court is not entirely unrelated to the alleged FDCPA violations, the fact that Plaintiff can no longer exercise a right of redemption to the subject Property does

not automatically foreclose his ability to seek monetary damages (and other relief) pursuant to the FDCPA. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 389 (4th Cir. 2014) ("Debt collectors that violate the FDCPA are liable to the debtor for actual damages, costs, and reasonable attorney's fees. . . . The FDCPA also provides the potential for statutory damages up to $1, 000 subject to the district court's discretion.") (citing 15 U.S.C. § 1692k(a)(1), (a)(3), (a)(2)(A)) (internal citations omitted). The FDCPA applies with equal force to consumer transactions and debt beyond foreclosures of residential properties. To adopt Defendant's interpretation of the statute would run afoul of the FDCPA's stated legislative purpose. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) ("Congress enacted the FDCPA in 1977 . . . to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers.") (citing 15 U.S.C. § 1692(e)). Thus, a defendant may successfully foreclose on a home mortgage and dispossess a debtor of his or her real property in full accordance with applicable state law, but in doing so, incur civil liability for its conduct under FDCPA. *See Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 471 (E.D. Va. 2011) (explaining that "a debt collector must comply with the FDCPA while complying with a state foreclosure law."). In fact, the Fourth Circuit has explicitly held that a debtor need not dispute his or her debt before maintaining a cause of action under the FDCPA. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394 (4th Cir. 2014) (concluding that "a pre-suit validation requirement is unfounded in the text of the statute, contrary to the remedial nature of the FDCPA, and inconsistent with the FDCPA's legislative purpose of eradicating abusive collection practices. We therefore hold that a debtor is not required to dispute his or her debt pursuant to § 1692g as a condition to filing suit under § 1692e."). Accordingly,

and pursuant to the enunciated standard provided by Fed. R. Civ. P. 12(b)(1), the Court finds that the operative Complaint sufficiently establishes the existence of subject matter jurisdiction.

## B. Collateral Estoppel

Defendant argues that collateral estoppel prohibits the instant suit because of the final disposition of the Georgia Action. As explained herein, the Court disagrees because the requisite elements of collateral estoppel are not present.

"Collateral estoppel, or issue preclusion, provides that once a court of competent jurisdiction actually and necessarily determines an issue, that determination remains conclusive in subsequent suits, based on a different cause of action but involving the same parties, or privies, to the previous litigation." *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48-49 (1897) ("[A] 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ....' ")) (omissions in original); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). Under Fourth Circuit law, collateral estoppel requires the following five elements be established[11]:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue actually must have been determined in the prior proceeding; (3) determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party

---

[11] Relevant case law appears to conceptualize the elements as either four or five discrete elements, sometimes combining the requirement that the issue was critical and necessary part and that such issue was actually determined. *See e.g., Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007) (explaining that the required elements are: (1) the parties to the two proceedings, or their privies, be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior action and must have been essential to the prior judgment; . . . (3) the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action . . .[; and (4) mutuality.]") (citing *In re Ansari*, 113 F.3d 17, 19 (4th Cir. 1997) (quoting *TransDulles Ctr., Inc. v. Sharma*, 252 Va. 20, 472 S.E.2d 274, 275 (1996))). Whether these two elements are considered together or separately is of no moment, as the burden of proof is unaffected.

against whom preclusion is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Wilson v. Johnson*, No. 1:07CV165 LMB/IDD, 2011 WL 570264, at *3 (E.D. Va. Feb. 14, 2011) (citing *Eddy v. Waffle House, Inc.*, 482 F.3d 674, 679 (4th Cir. 2007)). "Collateral estoppel, however, 'only bars relitigation of issues actually resolved in a previous suit.'" *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 125–26 (4th Cir. 2014) (quoting *Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 554 n.2 (4th Cir. 2013) (citing *Colandrea v. Wilde Lake Community Ass'n*, 361 Md. 371, 761 A.2d 899, 907 (2000))).[12]

The Court finds that the issues sought to be determined by the Georgia Action, though related, are *not* identical to those engendered by the current suit. Indeed the essential element of the FDCPA cause of action, the "communication from a debt collector," in the Georgia Action is the *December 12, 2013 letter from PennyMac* (ECF No. 50; Georgia Action, ECF No. 25, attach. 2), whereas the "communication from a debt collector" in the instant matter is the *April 21, 2014 letter from Defendant* (ECF No. 12, attach. 1). As alleged in the Georgia Action complaint,

> On or about December 15th, [sic] 2013, while the loan was still in default, Plaintiff received an initial communication and debt validation letter sent pursuant to 15 U.S.C. § 1692(g) in the mail from Defendant (hereinafter "Letter"). A true and correct copy of the Letter is attached hereto as Exhibit "A".

Georgia Action, ECF No. 25 (Amended Complaint), attach. 1 (Exhibit A). This December 2013 letter, attached as an exhibit to the Georgia Action complaint, has also been provided by Plaintiff in the current suit as an exhibit in support of Plaintiff's Opposition to Defendant's Motion to Dismiss. *See* ECF No. 50. A cursory comparison of this December 12, 2013 letter (ECF No. 50)

---

[12] In *Powell*, the Fourth Circuit declined to find that collateral estoppel applied to the issue of whether an assignment had occurred because in the previous collection action, "the Baltimore City District Court held only that Palisades had failed to produce records documenting the assignment, not that there had been no assignment to Palisades at all." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 125–26 (4th Cir. 2014)

with the April 21, 2014 letter (ECF No. 12, attach. 1) makes it clear that these are two different communications, sent to Plaintiff by two different entities, on two different dates. Thus, the requisite elements to warrant the application of collateral estoppel are not established, and Defendant's Motion to Dismiss cannot be granted on this basis.

### C. Failure to State a Claim (Rule 12(b)(6))

In evaluating Plaintiff's claims, the Court has considered both documents attached to the operative Complaint and certain documents proffered by Plaintiff in opposition to Defendant's dispositive motion. "A court 'may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed,' without converting the motion into a motion for summary judgment." *Jeffrey J. Nelson & Assocs., Inc. v. LePore*, No. 4:11cv75, 2012 WL 2673242, at *4 (E.D. Va. July 5, 2012) (citation omitted). The documents considered by the Court are integral to Plaintiff's complaint, and, since he proffered them, are not contested as to authenticity. Thus the Court considers them without converting Defendant's Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.

### 1. Elements of private FDCPA action

To successfully mount a claim under the FDCPA a plaintiff must show that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debtor collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Dikun v. Streich*, 369 F. Supp. 2d 781, 784–85 (E.D. Va. 2005) (citations omitted). For the purposes of clarity, the Court will separately address each of the aforementioned elements.

### a. Collection activity arising from consumer debt

It is axiomatic that for there to be collection activity arising from a consumer debt, "there must first be a 'debt.'" *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 375–76 (4th Cir. 2006). The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Act also provides that "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. § 1692a(3). Taken together, it is clear that Plaintiff, a natural person, is a consumer who incurred a consumer debt as defined by the operative statute. Thus, the first element is satisfied.

### b. Debt Collector

With respect to the second element, Defendant asserts that it is *not* a debt collector under the FDCPA. The operative statute defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). As the Fourth Circuit recently noted, this definition "excludes 'any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation.'" *McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 359 (4th Cir. 2016) (quoting 15 U.S.C. § 1692a(6)(F)(i)).

"The Fourth Circuit has held that a trustee acting in connection with a foreclosure can be a 'debt collector' under the FDCPA. Moreover, 'it is well-established that the Act applies to

17

lawyers who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation.'" *Blick v. Wells Fargo Bank, N.A.*, No. 3:11-CV-00081, 2012 WL 1030137, at *7 (W.D. Va. Mar. 27, 2012), *aff'd*, 474 F. App'x 932 (4th Cir. 2012) (quoting *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378-80 (4th Cir. 2006))[13] (internal citations omitted). Here, Defendant is a law firm who apparently attempted to collect debt on behalf of another and/or foreclose on an outstanding secured obligation as substitute trustee using non-judicial foreclosure processes in state/commonwealth courts. This puts Defendant in a different position than PennyMac, creditor and/or loan servicer of Defendant's loan (and the former defendant in the Georgia Action) because in this District, courts have held that "creditors, mortgag[ees], and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Ruggia v. Wash. Mut.*, 719 F.Supp.2d 642, 647–48 (E.D. Va. 2010), *aff'd* 442 F. App'x 816 (4th Cir. 2011) (per curiam).[14]

Ultimately, the question as to whether Defendant is a debt collector under the FDCPA has already been answered by the Fourth Circuit with respect to *this* very Defendant.[15] In

---

[13] Defendant cites to *Wilson* in support of the proposition that "[t]he Fourth Circuit has held that an attorney foreclosing on a property pursuant to a deed of trust can be considered a debt collector under the FDCPA *depending on the circumstances*." ECF No. 43 at 9 n.1 (emphasis in original). This tortured interpretation comes dangerously close to misstating the holding as applied to this Defendant. *See Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 375 (4th Cir. 2006) ("Because we believe the district court misinterpreted the scope of the Act, and conclude that trustees, including attorneys, acting in connection with a foreclosure can be "debt collectors" under the Act, we reverse and remand.").

[14] *See Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 379 n.2 (4th Cir. 2006) ("Of course, whether a law firm or not, a company's own efforts to collect overdue payments from its own delinquent clients would not ordinarily make it a 'debt collector' under the Act, which specifically refers to those who collect debts 'owed or due or asserted to be owed or due *another.*'" (quoting 15 U.S.C. § 1692a(6) (emphasis added); citing *Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002) ("[C]reditors who are attempting to collect their own debts generally are not considered debt collectors under the statute.")).

[15] In *McCray v. Fed Home Loan Mortg. Corp.*, the instant Defendant was sued under the FDCPA by an individual plaintiff. The Fourth Circuit reversed the granting of Defendant's Motion to Dismiss, and with it, the District Court of Maryland's holding that Defendant was not a debt collector under the FDCPA. 839 F.3d 354, 361 (4th Cir. 2016). Although Defendant cited to the District Court disposition of *McCray* (2014 WL 293535 (D. Md.) in support of its claim that Defendant is not a debt collector, Defendant neglected to also provide the Fourth Circuit ruling which reversed that specific finding. *See* ECF No. 43 at 10 n.3. It is troubling that Defendant has failed to bring this controlling authority to the Court's attention when discussing whether it properly can be considered a debt collector, and such conduct will be the subject of a separate Order.

*McCray*, an action under the FDCPA presenting claims similar to those brought by Plaintiff here, the Fourth Circuit specifically "h[e]ld that McCray's complaint adequately alleges that the [Samuel I.] White firm and the Substitute Trustees were debt collectors and that their actions in pursuing foreclosure constituted a step in collecting debt and thus debt collection activity that is regulated by the FDCPA." *McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 361 (4th Cir. 2016). Accordingly, because the Court finds that Defendant was acting as a debt collector when it sent the April 21, 2014 Letter to Plaintiff, the second element is satisfied.

### c. Actions or omissions prohibited by the FDCPA

The third element of an FDCPA claim is where the claims asserted in Plaintiff's suit meet their demise. Generally speaking, the FDCPA prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f. *See also Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013) (observing that "the courts use § 1692f to punish conduct that FDCPA does not specifically cover."). The FDCPA also requires that debt collectors send the consumer a written notice validating the debt by providing certain information about the debt. 15 U.S.C. § 1692g. When considering whether a violation of Section 1692e, Section 1692f, or 1692g has occurred, "Fourth Circuit precedent requires this Court to adopt the objective 'least sophisticated consumer' standard" when considering whether a debt collector has violated the various subsections. *Kelley v. Nationstar Mortg., LLC*, No. 3:13-CV-00311-JAG, 2013 WL 5874704, at *3 (E.D. Va. Oct. 31, 2013) (applying the standard to § 1692(e) [sic]) (citing *Creighton v. Emporia Credit Serv., Inc.*, 981 F.Supp. 411, 414 (E.D. Va. 1997) (applying standard to 15 U.S.C. § 1692g claim) (citing *United States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 135–36, 138–

39 (4th Cir. 1996) (adopting this standard in the context of 15 U.S.C. § 1692e))). *See also Biber v. Pioneer Credit Recovery, Inc.*, 229 F. Supp. 3d 457, 472 (E.D. Va. 2017) (applying the standard to Section 1692f) (citing *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 138 (4th Cir. 1996)). It is with this element in mind that the Court examines Plaintiff's individual claims.

### 2. Count I – Alleged Violations of FDCPA (Plaintiff's Individual Claims)

The allegations presented in the Complaint assert Defendant's violations of three different subsections of the FDCPA: Section 1692e, Section 1692f, and Section 1692g.[16]

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiff claims that Defendant violated "Section 1692(e) [sic]" in the following ways: "[b]y misidentifying the creditor in the Letter," ECF No. 12 at ¶ 33, "misstated the total amount of debt due in the Letter," *id.* at ¶ 34, "threatened and/or implied in the Letter it was going to foreclose," *id.* at ¶ 35, "purported to exercise the power of sale in the void Deed of Trust and recorded a void foreclosure deed on the Plaintiff's property," *id.* at ¶ 36. However, Plaintiff does not specifically identify which of the sixteen (16) specific numbered subsections of Section 1692e were violated. *See Kelley v. Nationstar Mortg., LLC*, No. 3:13-CV-00311-JAG, 2013 WL 5874704, at *2 (E.D. Va. Oct. 31, 2013) ("Most of the sixteen sub-sections that follow this language prohibit various forms of false representation . . ."). Accordingly, the Court is left to divine which theory of

---

[16] The proper citations to the various FDCPA subsections do not include parentheses around the first letter. Plaintiff's Complaint and Opposition exclusively utilize the incorrect citations. For example, the Complaint alleges five different violations of "15 U.S.C. § 1692(e)." ECF No. 12 at 11, ¶¶ 32-36. This is erroneous because Section 1692(e) does not identify any prohibited actions; rather, it provides the legislative purpose of the FDCPA. *See* 15 U.S.C. § **1692(e)** ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."). Obviously, Plaintiff intended to reference 15 U.S.C. § 1692e, which prohibits a debt collector's use of false, deceptive, or misleading representations in its attempts to collect a debt. Although such pleading mistakes would undoubtedly warrant dismissal with leave to amend because they fundamentally alter the sufficiency of the claims, the Court finds that the interests of judicial efficiency and economy are not served by such a disposition. Rather, and in the interest of clarity, when quoting from Plaintiff's filings, the Court will employ the correct citation upon which it assumes Plaintiff intended to rely.

FDCPA violation under Section 1692e Plaintiff intended to assert.

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff contends that Defendant violated Section 1692f(6)(A) and Section 1692f generally by stating that it was "instructed to initiate foreclosure on the mortgage on your property" when the Deed of Trust was cancelled pursuant to the Truth in Lending Act and also before the Lender in the Deed of Trust complied with a condition precedent to foreclosure. ECF No. 12 at ¶¶ 40-44. According to Plaintiff, because there was no present right to possession of property (since the Deed of Trust had been cancelled), Defendant was not allowed to take or threaten to take any non-judicial action to effectuate Plaintiff's dispossession or disablement of the Property. Plaintiff avers that Defendant improperly foreclosed upon the Property on or about August 25, 2014 using the Virginia non-judicial foreclosure laws despite the fact that the Deed of Trust was cancelled pursuant to Plaintiff's rescission under the Truth in Lending Act. Further, Defendant purported to exercise the power of sale in the void Deed of Trust and recorded a void foreclosure deed on Plaintiff's property. ECF No. 12 at ¶¶ 40-43. The Court notes that

> it is axiomatic that a § 1692f cause of action may not be based on the "same alleged misconduct that undergirds [a] § 1692e claim." . . . Thus, courts routinely dismiss § 1692f claims where the plaintiff "does not allege any conduct in [a § 1692f claim] separate from the conduct that forms the basis of the § 1692e claims."

*Biber v. Pioneer Credit Recovery, Inc.*, 229 F. Supp. 3d 457, 474 (E.D. Va. 2017) (quoting *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013); *Penn v. Cumberland*, 883 F.Supp.2d 581, 594 (E.D. Va. 2012)) (internal citations omitted).

Section 1692g requires a debt collector to provide the debtor with written validation of the debt "[w]ithin five days after the initial communication with a consumer in connection with

the collection of any debt . . . unless the following information [was] contained in the initial communication or the consumer has paid the debt." 15 U.S.C. § 1692g. Plaintiff also alleges that Defendant violated Section 1692g(a)(1)-(2) by misstating the total amount of debt due in the subject letter and by failing to identify the true creditor in the Letter. ECF No. 12 at ¶¶ 38-39.[17]

Because the allegedly improper actions of Defendant identified by Plaintiff, if true, would violate more than one subsection of Section 1692, the Court will address each of the allegedly impermissible actions rather than repetitively address whether the same conduct constitutes a separate and discrete violation of each subsection of the statute.[18]

### a. Misstating Total Amount of Debt

As previously recounted, Plaintiff alleges that Defendant violated Sections 1692e and 1692g(a)(1) by misstating the total amount of debt due in the subject letter. ECF No. 12, ¶ 38. Section 1692e(2)(A) prohibits the debt collector from making a "false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692g(a)(1) requires a debt collector's to send to a debtor "a written notice containing . . . the amount of the debt." 15 U.S.C. § 1692g(a)(1). According to Plaintiff, Defendant violated Section 1692e and Section 1692g(a)(1) because the subject letter is dated April 21, 2014, yet states that the amount of the debt is as of April 11, 2014. *See* ECF No. 12, attach. 1 (Exhibit A). The Court disagrees.

Even accepting Plaintiff's assignment of error as true, the amount of the debt as stated in the April 21, 2014 letter comports with the requirement of Section 1692g(a)(1) which requires simply that the communication state "the amount of the debt." *See Kelley v. Nationstar Mortg., LLC*, No. 3:13-CV-00311-JAG, 2013 WL 5874704, at *6 (E.D. Va. Oct. 31, 2013) (declining to

---

[17] The operative Complaint (ECF No. 12) provides two different paragraphs as "38," so for clarity purposes, the Court will assume that the second paragraph should have been numbered as "39."

[18] As previously noted, this is especially important to the alleged violations of Section 1692e, of which there are sixteen (16) subsections which each form a discrete violation, yet are not specifically identified in the Complaint.

find a violation of Section 1692g(a)(1) where "[t]he sentence states the total amount of debt on a specific date. This sentence clearly informs the debtor of the 'amount of the debt.'"). Thus, as is the circumstance in the instant case, "a collection letter which states either the amount due as of the date of the letter or *as of a specific date* is in compliance with § 1692g." *Kelley v. Nationstar Mortg., LLC*, No. 3:13-CV-00311-JAG, 2013 WL 5874704, at *5 (E.D. Va. Oct. 31, 2013) (citation omitted) (emphasis added). *See also Davis v. Segan*, No. 1:15-CV-1091-GBL-IDD, 2016 WL 254388, at *3 (E.D. Va. Jan. 19, 2016) (observing with approval that other courts in this division have "acknowledged the difficulty in conveying an amount due on a future date '[b]ecause of the nature of loans with daily compounding interest charges, in order to state the correct amount of the debt, the debt collect must state is as of a specific day.'") (quoting *Kelley v. Nationstar Mortg., LLC*, No. 3:13-CV-00311-JAG, 2013 WL 5874704, at *5 (E.D. Va. Oct. 31, 2013)). In contrast, courts have found sufficiently pleaded facts to support an FDCPA action for an incorrect statement of debt where a creditor or debt collector provides the debtor with inconsistent debt amounts. *See Carter v. Countrywide Home Loans, Inc.*, No. CIV. 3:07CV651, 2008 WL 4167931, at *10 (E.D. Va. Sept. 3, 2008) ("Plaintiffs support their contention that Countrywide misrepresented the character of the debt by alleging that Countrywide, through its trustee, White, provided inconsistent payoff amounts of $218,305.83 on October 17, 2006, and $212,874.37 on December 14, 2006."). Because the Court finds that the statement of debt was not a misstatement under Section 1692g, any alleged violations of other subsections of Section 1692e based on these same grounds are untenable.

Even assuming *arguendo* that any part of Defendant's statement regarding the amount of debt in the April 21, 2014 letter was false or misleading, Plaintiff cannot establish that such a statement established FDCPA violations because the statement was not material. As the Fourth

23

Circuit held in 2014, "[a] logical corollary of the least sophisticated consumer test is that false, deceptive, and misleading statements must be *material* to be actionable. *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014) (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) ("[F]alse but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f"); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Hahn v. Triumph P'ships*, 557 F.3d 755, 758 (7th Cir. 2009) ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable"); *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) ("[C]ourts have generally held that violations grounded in 'false representations' must rest on material misrepresentations"); *Lembach v. Bierman*, 528 F. App'x. 297, 303 (4th Cir. 2013) (per curiam) ("[T]o plead a claim of false representation under the FDCPA, the party must show that the representations are material")).

Applying this principle to the subject statute, "[t]he materiality requirement limits liability under the FDCPA to genuinely false or misleading statements that 'may frustrate a consumer's ability to intelligently choose his or her response.'" *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014) (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010); citing *Hahn v. Triumph P'ships*, 557 F.3d 755, 758 (7th Cir. 2009) ("The statute is designed to provide information that helps consumers to choose intelligently ...")). The Fourth Circuit concluded that "only misstatements that are important in the sense that they could objectively affect the least sophisticated consumer's decision[-]making are actionable." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014) (citing *Black's Law Dictionary* 1124 (10th ed. 2014) (defining "material")). In assessing materiality, "we are not concerned with mere technical falsehoods that mislead no one." *Powell v. Palisades*

24

*Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014) (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)).  Nothing about the amount of debt stated in the April 21, 2014 letter from Defendant would have objectively affected even the least sophisticated consumer's decision making, and indeed it did *not* affect that of Plaintiff.  Based on the allegations contained in the Complaint and Plaintiff's other filings, which are integral to the Complaint, the Court finds that upon receiving the complained of April 21, 2014 correspondence, Plaintiff immediately made efforts to discern and/or dispute the amount and/or validity of the debt stated therein.  On or about May 21, 2014, Plaintiff wrote to Defendant, and invoked his statutory right to require Defendant's validation of the debt pursuant to 15 U.S.C. § 1692g(b), which provides in pertinent part that

> [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).  Plaintiff's May 21, 2014 communication to Defendant stated

> I am sending this letter to you in response to a notice I received from you on April 24, 2014. Be advised, this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809(b) [sic] that your claim is disputed and validation is requested.

> This is NOT a request for "verification" or proof of my mailing address, but a request for VALIDATION made pursuant to the above named Title and Section. I respectfully request that your office provide me with competent evidence that I have any legal obligation to pay you.

> Please also provide me with the following:

- Explain and show me how you calculated what you say I owe, the date of the letter is April, [sic] 21, 2014 and the date of amount owed is April 11, 2014, please state the amount owed on April, 21, 2014 [sic]. I dispute owing 248,133.45 on April, [sic] 11, 2014.
- Provide me with copies of any papers that show I agreed to pay your client what you say I owe; [sic]
- Identify the original creditor.

ECF No. 52 (identified by Plaintiff's electronic filing as "May 22, 2014 Response by Davis to SIWPC's April 21 Notice") (capitalization in original). On June 3, 2014, Defendant responded to Plaintiff in writing and advised

> We are in receipt of your letter received May 21, 2014. We have verified that the debt is due and owing. Enclosed please find a true and correct copy of the Note dated December 10, 2012, evidencing the underlying obligation. The name and address of the original creditor is Bank of America, P.O. Box 650070, Dallas, TX 75265-0070. Payoff figures containing a breakdown of the debt will be sent under separate cover.[19]

> Your letter has also been forwarded to Penny Mac [sic] Loan Services so that it may address any remaining issues.

ECF No. 53 (identified by Plaintiff's electronic filing as "June 3, 2014 Response by SIWPC to Davis").

Additionally, the Court notes that because Plaintiff *concedes* that he defaulted on the loan beginning in October 2013, the amount of defaulted debt was neither misleading nor unexpected, even if Plaintiff is evaluated under the least sophisticated consumer standard. *See Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015) (explaining that under the least sophisticated

---

[19] Although Plaintiff argues in his Opposition that "[Defendant's] failure to notify [Plaintiff] of the matter by which the $248,135 was arrived at, i.e., interest and other charges, operated to violated Section 1692e," ECF No. 47 at 15, this claim has not been asserted in the Complaint and the Court will not consider it. *See* ECF No. 12 at 8-9, ¶¶ 23-24 ("Defendant failed to correctly state the total amount due in the Letter because it only stated the amount of the debt as of April 11, 2014 and the Letter was sent on April, [sic] 21, 2014. . . . Plaintiff further denies owing two hundred forty eight thousand one hundred thirty three dollars and forty five [sic] cents ($248,133.45) on April 21, 2014 because he was not liable for any finance or other charges that were wrongly included in the amount due."), *id.* at 11, ¶ 34 ("[Defendant] misstated the total amount of the debt due in the Letter in violation of 15 U.S.C. § 1692(e) [sic].").

consumer standard, "we consider how a 'naïve' consumer would interpret the statement") (citing *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 136 (4th Cir. 1996)). To the extent that Plaintiff alleges that he was surprised by the outstanding debt amount because he had rescinded the loan pursuant to the Truth in Lending Act, this argument is addressed (and deemed meritless) in the subsequent section, Part III.C.2(b), *infra.* In contrast, the Fourth Circuit has found a material misstatement of a debt where a consumer previously believed she had satisfied her debt in full by rendering payments, and subsequently received a communication that "contained an overstatement in excess of 50 percent, the least sophisticated consumer could be led to decide to pay far more than she otherwise would have paid" because

> the inquiry is not whether the least sophisticated consumer would have acted differently upon receiving Palisades' Assignment of Judgment. Instead, it is whether the information would have been important to the consumer in deciding how to respond to efforts to collect the debt. Given the importance of the figures that were inaccurately reported in the Assignment of Judgment and the degree to which they were misstated, the misrepresentations here easily satisfy that test.

*Powell v. Palisades Acquisition XVI, LLC,* 782 F.3d 119, 127 (4th Cir. 2014).

Although under the Motion to Dismiss standard pursuant to Fed. R. Civ. P 12(b)(6) the truth of the facts alleged is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Dangerfield v. WAVY Broad., LLC,* 228 F. Supp. 3d 696, 701 (E.D. Va. 2017) (quoting *E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000); citing *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555))). Here, Plaintiff invites the Court to find that because Plaintiff had allegedly unilaterally rescinded the subject loan, the amount of outstanding debt as stated in the April 21, 2014 correspondence from Defendant was false and misleading. The Court declines to adopt this unreasonable conclusion. Accordingly, to

the extent that Plaintiff alleges FDCPA violations based on this issue, the Court finds that no such violations exist and Defendant's Motion to Dismiss is **GRANTED with prejudice** as to these violations.

### b. Validity of Deed/Foreclosure Action

In the operative Complaint, Plaintiff baldly states that "Bank of America, N.A. failed to deliver all the required material disclosures pursuant to the Truth in Lending Act 15 U.S.C. 1601 et seq. thereby giving rise to an extended three (3) year right to cancel the loan transaction and unilaterally void the Deed of Trust." ECF No. 12 at ¶ 12. Plaintiff goes on to assert that "[o]n or about March 1, 2014[20], Plaintiff sent notice via U.S. mail to his mortgage servicer PennyMac and the Veterans Administration, the creditor as disclosed by PennyMac, that he was exercising his extended three (3) year right of rescission under the Federal Truth in Lending Act 15 U.S. Code [sic] § 1635(b)." ECF No. 12 at ¶ 14. Plaintiff claims that because he timely rescinded the refinancing transaction, the Deed of Trust was invalid or void at the time Defendant sent the subject communication to Plaintiff stating that Defendant had been instructed to initiate foreclosure proceedings. According to Plaintiff, because the Deed of Trust was invalid, Defendant violated the FDCPA by threatening to take action when not so entitled, and then by actually recording an invalid Deed of Trust when foreclosing upon the Property, in violation of Sections 1692e and 1692f. The Court disagrees, as explained herein.

### (i)    Rescission Pursuant to the Truth in Lending Act

Both Plaintiff's Complaint (ECF No. 12) and Opposition to Defendant's Motion to Dismiss (ECF No. 47) evidence a clear lack of understanding regarding the Truth in Lending Act

---

[20] Although Plaintiff's Complaint provides March 1, 2014 as the date of the rescission notice, in his Opposition to Defendant's Motion to Dismiss, as well as in the attached exhibit, Plaintiff provides March 3, 2014 as the date of the rescission letter. *See* ECF No. 47 at 5; ECF No. 51 ("Exhibit 4 to Plaintiff's Opposition Memorandum"). Whether the attempted rescission letter was dated March 1 or March 3 is not material.

("TILA") 15 U.S.C. §§ 1601 *et seq.* When TILA was adopted, "Congress declared that '[i]t is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 275–76 (4th Cir. 2012) (quoting 15 U.S.C. § 1601(a)). *See e.g., Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 791-92 (2015) (explaining that the legislature purpose of TILA was to help consumers to "avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing."). Pursuant to that legislative intent, TILA provides consumers with two ways to rescind a transaction. The first is an automatic right to rescind which provides that "[f]ollowing the consummation of a loan transaction, TILA allows a borrower three business days to rescind the transaction." *Csoka v. Bank of Am., N.A.*, No. 1:15-CV-0876-GBL-IDD, 2016 WL 270302, at *2 (E.D. Va. Jan. 21, 2016) (citing 15 U.S.C. § 1635(a)).

"Alternatively, this right of rescission is extended from three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure." *Csoka v. Bank of Am., N.A.*, No. 1:15-CV-0876-GBL-IDD, 2016 WL 270302, at *2 (E.D. Va. Jan. 21, 2016) (citing 12 C.F.R. § 1026.23(3)(i)). *See also Gilbert v. Residential Funding LLC*, 678 F.3d 271, 276 (4th Cir. 2012) ("explaining that "TILA requires that a creditor make certain material disclosures at the time the loan is made. . . . If the creditor fails to comply with this mandate, the borrower has the right to rescind up to three years after the transaction.") (quoting 15 U.S.C. §§ 1638(a); 1635f) (internal citations omitted). When determining the timing of an alleged TILA violation based on the lender's failure to provide required disclosures, the "'date of the occurrence of the violation' is the date on which the borrower accepts the creditor's extension of credit." *Strickland-Lucas v. Citibank, N.A.*, No. CV

29

ELH-16-0805, 2017 WL 2506144, at *8 (D. Md. June 9, 2017) (quoting *Brown v. Ocwen Loan Servicing, LLC*, PJM–14–3454, 2015 WL 5008763, at *7 (D. Md. Aug. 20, 2015) (internal quotation marks and citation omitted), *aff'd*, 639 F. App'x 200 (4th Cir. 2016)). *See also* 15 U.S.C. § 1635(f) (explaining that the accrual period for a rescission pursuant to the lender's TILA violations commences upon the consummation of the transaction.").

Here, Plaintiff's Complaint and Opposition to Defendant's Motion to Dismiss provide December 10, 2012 as the date when the consumer credit transaction commenced upon Plaintiff's execution of a promissory note in favor of Bank of America, N.A. in order to refinance the mortgage on his primary residence. *See* ECF Nos. 12, ¶ 5 ("On or about December 10[th], 2012, Plaintiff signed a promissory note in favor of Bank of America, N.A. that was used to re-finance the mortgage on his primary residence") and 56 (Promissory Note). Consequently, the Court will proceed according to the date provided in the Promissory Note – December 10, 2012 – as the date of the purported violation.[21]

Accordingly, for Plaintiff to qualify for the automatic three day rescission, he had to provide the requisite notice of rescission by Thursday, December 13, 2012. Plaintiff must concede that his own proffered date of notice of rescission – March 3, 2014 – clearly does not satisfy the three day requirement for automatic rescission. *See* ECF No. 51. Thus, Plaintiff's only salvation lays, if at all, in the alternative, three year rescission mechanism. *See Jesinoski v. Countrywide Home Loans, Inc.*, 135 S.Ct. 790, 793 (2015) (explaining that the borrower must exercise this right by providing the lender written notice within three years of the transaction of

---

[21] Also proffered by Plaintiff in his Opposition is ECF No. 51, the March 3, 2014 letter written by Plaintiff to the Department of Veterans Affairs in which he seeks to rescind the relevant transaction. Strangely, the letter advises the VA that the transaction Plaintiff seeks to rescind was entered into on September 3, 2013. *Id.* In light of Plaintiff's averment in the operative Complaint that the transaction date was December 10, 2012, as substantiated by the promissory note, the Court finds the September 3, 2013 reference to be simply a scrivener's error on the part of Plaintiff.

his intent to rescind, but is not necessarily required to file a claim for the same).

### (ii) Entitlement to Rescission

Although Plaintiff's claimed notice of rescission date of March 3, 2014 would clearly fall within the three years allowed by this rescission mechanism, such rescission is *not* automatic. If Bank of America does not consent to rescission, then Plaintiff is required to establish his entitlement to such because Bank of America either failed to give Plaintiff notice of his right to rescission or failed to provide required disclosures. Plaintiff's Complaint appears to claim entitlement to rescission based on the latter. *See* ECF No. 12 at ¶ 12 ("Bank of America, N.A. failed to deliver all the required material disclosures pursuant to the Truth in Lending Act 15 U.S.C. 1601 *et seq.* [sic] thereby giving rise to an extended three (3) year right to cancel the loan transaction and unilaterally void the Deed of Trust.").

As explained herein, Plaintiff has not advanced a separate discrete claim demonstrating his entitlement to rescission pursuant to TILA. Rather, Plaintiff has presented his bald, unsupported legal conclusion that he is entitled to rescission, which the Court is not required to accept and declines to do so. *See Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616 (D. Md. 2017) (explaining that "a court is not required to accept legal conclusions drawn from the facts.") (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A proper claim for rescission pursuant to TILA in these circumstances would require the following: (1) notice provided to the lender within the three year period; (2) either an indication that the lender consented to rescission or a request that the Court grant a rescission based on the facts alleged in the Complaint (including the identification of the disclosures the lender failed to provide); and (3) a present ability to tender the proceeds. Plaintiff has not fulfilled the latter two requirements in any respects.

31

## (A) NOTICE TO LENDER

In order to effectuate rescission, the borrower must notify the creditor of his right to do so. *See* 15 U.S.C. § 1635(a). The Fourth Circuit has interpreted this clause as requiring *more* than a stated intent to rescind:

> The natural reading of [TILA] is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined.... Until such decision is made, the [borrowers] have only advanced a claim seeking rescission.

*Parham v. HSBC Mortg. Corp.*, 826 F. Supp. 2d 906, 910 (E.D. Va. 2011), *aff'd sub nom. Parham v. HSBC Mortg. Corp.*, (USA), 473 F. App'x 244 (4th Cir. 2012) (quoting *Am. Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) (quoting *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54–55 (1st Cir. 2002))). Here, based on Plaintiff's representation, he purportedly provided this notice on March 3, 2014 via a written correspondence, thus satisfying the threshold requirement of providing the initial notice but nothing else.

## (B) LENDER CONSENT OR JUDICIAL FINDING OF RESCISSION

Plaintiff's purported rescission (and resultant entitlement to relief pursuant to the FDCPA), "is not effective unless [the lender] consents to it, or this Court rules that [Plaintiff] is entitled to rescind." *Parham v. HSBC Mortg. Corp.*, 826 F. Supp. 2d 906, 910 (E.D. Va. 2011), *aff'd sub nom. Parham v. HSBC Mortg. Corp.*, (USA), 473 F. App'x 244 (4th Cir. 2012). Thus, in order to recover for Defendants' alleged violations of the FDCPA based on Defendant's improper threat to foreclose on an allegedly invalid Deed of Trust, and that Defendant filed the same in Gloucester County Circuit Court, the lender must consent to the rescission or this Court must rule that Plaintiff is entitled to rescind. *See Parham v. HSBC Mortg. Corp.*, 826 F. Supp.

2d 906, 910 (E.D. Va. 2011), *aff'd sub nom. Parham v. HSBC Mortg. Corp.*, (USA), 473 F. App'x 244 (4th Cir. 2012). Here, nothing in the Record suggests that Bank of America or any other lender consented or consents to rescission, and nothing in the operative Complaint could be construed as Plaintiff's request for a judicial determination that he is entitled to rescission. However, even if Plaintiff had articulated such a request, it would be denied for the following two reasons.

### (C) MISSING DISCLOSURES

First, TILA requires a Plaintiff to specifically identify the disclosure(s) that the lender failed to make. *See Csoka v. Bank of Am.*, N.A., No. 1:15-CV-0876-GBL-IDD, 2016 WL 270302, at *4 (E.D. Va. Jan. 21, 2016) (observing that "[p]laintiffs are only entitled to rescission of their loan if Defendant failed to satisfy a TILA disclosure requirement.") (citing *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277 (4th Cir. 2012)). Courts within the Eastern District of Virginia have found that "[t]he required material disclosures include, among other things, the annual percentage rate, the method of determining the finance charge, and the amount of the finance charge." *Parham v. HSBC Mortg. Corp.*, 826 F. Supp. 2d 906, 910 (E.D. Va. 2011), *aff'd sub nom. Parham v. HSBC Mortg. Corp.*, (USA), 473 F. App'x 244 (4th Cir. 2012) (citing 15 U.S.C. § 1639(a)). Here, Plaintiff neglected to identify the disclosures that he did not receive from the Bank of America. Instead, Plaintiff makes a general assertion that "Bank of America, N.A. failed to deliver all the required material disclosures pursuant to [TILA] thereby giving rise to an extended three (3) year right to cancel the loan transaction and unilaterally void the Deed of Trust." ECF No. 12 at 5-6, ¶ 12. This is wholly inadequate under even the most generous pleading standards. *Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616 (D. Md. 2017) (explaining that "to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set

forth 'enough factual matter (taken as true) to suggest' a cognizable cause of action, 'even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

It is well-established that "[w]hen a plaintiff seeks rescission under TILA, courts in the Fourth Circuit take into consideration such factors as the technical nature of the violation, damages (or lack thereof), prior misstatements by the plaintiff, and other equitable factors in deciding whether a plaintiff has stated a claim." *Canterbury v. J.P. Morgan Acquisition Corp.*, 958 F. Supp. 2d 637, 654 (W.D. Va. 2013), *aff'd sub nom. Canterbury v. J.P. Morgan Mortg. Acquisition Corp.*, 561 F. App'x 293 (4th Cir. 2014) (citing *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 819-21 (4th Cir. 2007); *Larrabee v. Bank of Am., N.A.*, 714 F. Supp. 2d 562, 566 (E.D. Va. 2010), *aff'd sub nom. Larrabee v. Bank of Am., NA*, 474 F. App'x 940 (4th Cir. 2012); *Yarney v. Wells Fargo Bank, N.A.*, Civil Action No. 3:09–cv–00050, 2010 WL 3075460 (W.D. Va. August 5, 2010) ("The failure to allege that the disclosure violation caused her harm, or that she did not receive actual notice of the right to rescind, weighs heavily against Plaintiff as the Court considers whether the equitable remedy of rescission is appropriate.")). Here, the Court is incapable of performing such an analysis given the total dearth of relevant information in the Complaint. "As Defendant's failure to send Plaintiff the required TILA disclosures is crucial to a claim seeking enforcement of a rescission after the initial three business days, [Plaintiff's] failure to include such facts is lethal to [his] Complaint because it presents no plausible claim for relief." *Csoka v. Bank of Am., N.A.*, No. 1:15-CV-0876-GBL-IDD, 2016 WL 270302, at *4 (E.D. Va. Jan. 21, 2016).

### (D) ABILITY OR INTENTION TO TENDER PROCEEDS

Second, Plaintiff has also failed to establish or even address his intent and ability "to

tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers," *Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976), as required by the Fourth Circuit, given that "[t]he equitable goal of rescission under TILA is to restore the parties to the 'status quo ante,'" *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007) (citing *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003); *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992)). *See Powers v. Sims & Levin*, 542 F.2d 1216, 1221-22 (4th Cir. 1976) (holding that Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers. . . [Thus] when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due."). This present ability to tender proceeds is required irrespective of whether the lender consents to rescission or the Court makes a judicial determination that the borrower is entitled thereto.

Because Plaintiff has made no representation regarding his present ability or intention to tender proceeds, "[e]ven assuming that the rescission deadline was extended by three years and [Plaintiff] timely exercised that right, [Plaintiff has] not stated a claim for rescission because [he does] not allege a present ability to tender the loan proceeds." *Raja v. Merscorp, Inc.*, No. 1:14-CV-1663, 2016 WL 8938518, at *2 (E.D. Va. May 11, 2016), *aff'd*, 672 F. App'x 250 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 2125 (2017) (citations omitted).

These individual pleading failures prove fatal to Plaintiff's attempts to establish his entitlement to rescission; accordingly, in the aggregate, these deficiencies signal a resounding death knell to Plaintiff's claims on these grounds. The Court finds that Plaintiff seeks FDCPA

35

relief based on nothing more than his *ipse dixit* allegation that he unilaterally rescinded the subject refinancing transaction pursuant to TILA. This puts the cart before the horse and evidences a fundamental misunderstanding of the operative statutes and the interrelation thereof. "In essence, [Plaintiff] claim[s] the right to simply walk away with a windfall of [the outstanding balance of the loan] without any further obligation. This construction not only offends traditional notions of equity, but misinterprets the procedural requirements of § 1635(b)." *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007). Plaintiff cannot shortcut his obligation to first establish the prerequisite TILA violation (for failure to provide disclosures) and resulting rescission that consequently forms the basis of the FDCPA violations alleged in the Complaint.

Consequently, as to Plaintiff's allegations that this conduct violates Section 1692e's general prohibition that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," the Court is unpersuaded. Similarly, to the extent that Plaintiff asserts that any of the same conduct constitutes violation(s) of Section 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f, the Court is unpersuaded.

> Congress did not define "unfair or unconscionable" but did provide a non-exhaustive list of examples, none of which is asserted by [Plaintiff] here. Relying on the plain meaning of the statute's terms, courts have considered an action unfair where it is "marked by injustice, partiality, or deception," and unconscionable when it is "unscrupulous," "show[s] no regard for conscience," or "affront[s] the sense of justice, decency, or reasonableness."

*Penn v. Cumberland*, 883 F. Supp. 2d 581, 593 (E.D. Va. 2012) (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010) (citations omitted)).[22]

---

[22] *See Penn v. Cumberland*, 883 F. Supp. 2d 581, 593 (E.D. Va. 2012) (observing that courts have found that "[a]ctions that violate § 1692f include the collection of any amount unless it is expressly authorized by the

However, even if there was merit to Plaintiff's claims on this ground, the alleged violations of Section 1692f would still fail. The Court finds that pursuant to Rule 12(b)(6), Plaintiff's Section 1692f claims must be dismissed because "the Complaint does not allege any facts unique to his § 1692f claim. Put differently, [Plaintiff] does not identify which of [Defendant's] actions were 'unfair and unconscionable,' in violation of § 1692f, as opposed to 'false, deceptive, or misleading,' in violation of § 1692e." *Biber v. Pioneer Credit Recovery, Inc.*, 229 F. Supp. 3d 457, 474 (E.D. Va. 2017). Specifically, Plaintiff asserts that Defendant violated Section 1692e when it "threatened and/or implied in the Letter it was going to foreclose" and "purported to exercise the power of sale in the void Deed of Trust and recorded a void foreclosure deed on the Plaintiff's property.'" ECF No. 12 at 11, ¶¶ 35-36. Plaintiff goes on to allege that Defendant violated Section 1692f(6)(A) because Defendant "stated in the Letter 'We have been instructed to initiate foreclosure on the mortgage on your property' when in fact the Deed of Trust was cancelled pursuant to [TILA]"; "foreclosed upon the Property using the Virginia non-judicial foreclosure laws when in fact the Deed of Trust was cancelled pursuant to [TILA]; and "purported to exercise the power of sale in the void Deed of Trust and recorded a void foreclosure deed on the Plaintiff's property." ECF No. 12 at 13-14, ¶¶ 41-43.

Assuming that the Court did not find the overlapping allegations of FDCPA violations to be dispositive, the result would be unchanged because, as explained in great detail, evaluation of the merits of Plaintiff's claims on these grounds requires the same disposition. In light of Plaintiff's unsuccessful attempts to establish FDCPA violations based upon rescission of the subject promissory note pursuant to TILA, the Court **FINDS** that Plaintiff fails to state a claim upon which relief can be granted, and **GRANTS** Defendant's Motion to Dismiss Count I with

---

agreement creating the debt or permitted by law, misuse of postdated checks, or filing a debt collection lawsuit without the necessary state license.") (internal citations omitted).

prejudice on those specific grounds.

### c. Misidentification of Creditor

Plaintiff alleges that Defendant violated Sections 1692e and 1692g by "misidentifying the creditor" and "as a direct and proximate result of Defendant's misidentification of the creditor in the April 21, 2014 letter, Plaintiff has had to hire legal counsel and incur additional fees and expenses to identify the true creditor." ECF No. 12 at 8, ¶ 21. For the purposes of this Court's consideration under a Motion to Dismiss standard, the Court is required to assume as true the facts alleged in the operative Complaint. *See Vitullo v. Mancini*, 684 F. Supp. 2d 747, 751 (E.D. Va. 2010) (citing *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001)). Thus, the Court must assume as true that Plaintiff's allegation that as a result of reading the April 21, 2014 letter, he was confused about the true identity of the creditor, and hired legal counsel to determine the correct creditor, *unless* such an inference would be illogical or unreasonable. *See Lembach v. Bierman*, 528 F. App'x 297, 300 (4th Cir. 2013) ("However, this Court 'need not accept the legal conclusions drawn from the facts,' and '[it] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'") (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *E. Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000))).

Notwithstanding this deference to the truth of Plaintiff's allegations, the Court finds Plaintiff's claims regarding Defendant's misidentification of the creditor to be illogical and unsupported by the facts alleged in the Complaint, based on the Court's review of the documents submitted by and relied upon by both Plaintiff and Defendant in their respective filings, and the Record as a whole, which as the Court already stated, includes judicial notice of the pleadings in both the Georgia and Maryland Actions.

38

### (i) Facts Specific to the "Misidentified Creditor" Claims

Based on the Complaint, Plaintiff's claimed confusion in April 2014 as to the proper creditor allegedly arose from contacts with PennyMac that apparently occurred prior to Plaintiff's receipt of the April 21, 2014 Letter from Defendant. The timeline of pertinent events is not well-articulated by the Complaint. However, using the Complaint and the other permissible documents provided in support of the Complaint, the Renewed Motion to Dismiss, and in the Record, the Court has established some semblance of a chronology upon which its findings are based. *See Goodrow v. Friedman & MacFadyen, P.A.*, No. 3:11CV20, 2012 WL 6725617, at *2 (E.D. Va. Dec. 27, 2012) (explaining that "'a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed.'") (quoting *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995))). *See also Brown v. Ocwen Loan Servicing, LLC*, PJM–14–3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x. 200 (4th Cir. May 6, 2016) (explaining that in the context of a motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment."); *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records").

As previously noted, Plaintiff failed to make any payments after September 2013 and was advised of his default status by letter dated November 15, 2013 ("November 15, 2013 Letter").

ECF No. 12, attach. 2 (Exhibit B). Therein, Bank of America advised Plaintiff that if he failed to cure the default amount (plus additional regular monthly payment(s) and late fees) by December 25, 2013, then Bank of America would accelerate the loan payments, causing the full amount to become due and payable in full. *Id.* In the Complaint, Plaintiff alleges that at the time Bank of America sent this November 15, 2013 Letter,

> PennyMac Investment Trust, a publicly traded (and owned) Real Estate Investment Trust (NYSE ticker symbol PMT) purchased the Plaintiff's promissory note from Bank of America in or around November 2013 while the loan was in default and then contracting with PennyMac Loan Servicing, LLC (Plaintiff's mortgage servicer) to collect the debt on its behalf.

ECF No. 12 at 8, ¶ 22. *See also* ECF No. 12 at 9, ¶¶ 27-28 ("On or about November 15, 2013 Bank of America, N.A., mailed a letter to Plaintiff purportedly sent pursuant to ¶ 22 of the Deed of Trust . . . Bank of America, N.A., had already sold and assigned all its interest in the deed of trust to PennyMac Investment Trust as the new noteholder and/or PennyMac as the new servicer such that it no longer possessed any legal right to enforce the deed as of that date the letter was sent.").

Subsequently, in a two-page letter dated December 12, 2013 ("December 12, 2013 Letter"), PennyMac Loan Services, LLC ("PennyMac") notified Plaintiff that effective December 3, 2013, servicing of Plaintiff's mortgage loan transferred from Bank of America to PennyMac. It appears that in Plaintiff's Amended Complaint in the Georgia Action, he attached pages one and two of the same December 12, 2013 letter as two separate exhibits such that the undated page two is attached as "Exhibit A" and the dated (December 12, 2013) page one is attached as" Exhibit B." The Court bases this conclusion on Plaintiff's own representation in the Georgia Action Amended Complaint, that "[i]n the very same envelope as the Letter [Exhibit A] discussed above Plaintiff also received the Mortgage Statement attached hereto as Exhibit 'B'".

40

Case No. 1:14-cv-02679-CAP ("Georgia Action"), ECF No. 25 at 8, ¶ 30. The first page of the
December 12, 2013 Letter specifically advised

> We are pleased to inform you that *the servicing of your mortgage loan* has
> transferred from Bank of America to PennyMac Loan Services, LLC
> ("PennyMac") effective December 03, 2013. The transfer of servicing does not
> affect any other terms or conditions of the mortgage documents, other than terms
> directly related to the servicing of your loan.

Case No. 1:14-cv-02679-CAP ("Georgia Action"), ECF No. 25 (Georgia Action Amended
Complaint), attach. 2 (Exhibit B) (emphasis added). The second (undated) page of this
December 12, 2013 letter was filed by Plaintiff and purports to be a written communication from
PennyMac Loan Services, LLC sent to Plaintiff advising him that PennyMac Loan Services,
LLC was the new loan servicer and identified "PENNYMAC LOAN SERVICES, LLC" as "the
creditor to whom the debt is owed." ECF No. 50 (capitalization and lack of spacing in original).
This single page document (ECF No. 50), as submitted in support of Plaintiff's untimely filed
Opposition to Defendant's Motion to Dismiss (ECF No. 47), does *not* include a date of
generation or transmission. *See* ECF No. 50. However, the earlier clarification by Plaintiff in
the Georgia Action that this was one page of a two page communication dated December 12,
2013 permits the Court to reach the conclusion that this was sent to Plaintiff on or about
December 12, 2013, as does the fact that this document is labeled in Plaintiff's electronic filing
as "2013 PMMAC Validation". *See* ECF No. 50.

As it is entitled to do, the Court considered the filings in the Georgia Action. *See Brown
v. Ocwen Loan Servicing, LLC*, PJM–14–3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20,
2015), *aff'd*, 639 F. App'x. 200 (4th Cir. May 6, 2016) (explaining that in the context of a motion
to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other
cases without converting a motion to dismiss into a motion for summary judgment."). Such a

review makes clear that this document (ECF No. 50) is *identical* to the document attached to Plaintiff's Amended Complaint in the Georgia Action as "Exhibit A", which the Court identifies as the second page of the December 12, 2013 Letter. *See* Georgia Action, ECF No. 25, attach. 1 (Exhibit A).[23] Accordingly, the Court can conclude that on or about December 12, 2013, Plaintiff was advised by PennyMac that PennyMac Loan Services, LLC was the creditor to whom his debt was owed.

### (ii) Analysis

Plaintiff alleges that "[i]n or around the same time" as he received the December 12, 2013 Letter, "PennyMac orally informed the Plaintiff the creditor was the Veterans Administration." ECF No. 12 at 8, ¶ 20. In construing the Complaint, the Court does not read the Complaint (or anything in the Record) as Plaintiff specifically identifying any entity (such as the Veterans Administration) as the correct creditor.[24] *See Dikun v. Streich*, 369 F. Supp. 2d 781, 785 (E.D. Va. 2005) (dismissing a Count where the plaintiff claimed that the defendant failed to accurately state the name of the creditor, but the complaint "[did] not include any indication of what name it contends is the accurate name of the homeowners association."). Rather, the only basis of Plaintiff's claim that the April 21, 2014 Letter "misidentified" the creditor appears to be Plaintiff's confusion in light of the alleged oral communication with PennyMac. Plaintiff conflates his alleged confusion as to the identity of the correct creditor with an impermissible misidentification by Defendant of the same. This unwarranted legal conclusion does not survive

---

[23] In fact, the automated heading that is generated on documents when submitted through the Court's Electronic Filing System as it appears on ECF No. 50 is obfuscated because Plaintiff clearly filed a copy of what was filed in the Georgia Action as ECF No. 25, attach. 1 (Exhibit A), resulting in a double "stamping" of the header.

[24] Additionally, the Complaint's identification of PennyMac Investment Trust as the "new noteholder" as of November 15, 2013 (ECF No. 12 at 9, ¶¶ 27-28), contradicts the Complaint's previous claim that upon receipt of the April 21, 2014 Letter from Defendant, he was confused as to the true identity of the creditor (ECF No. 12 at 8, ¶ 21), if the other allegations of the Complaint are considered true; namely, that around December 12, 2013, ("in or around the same time" as the December 12, 2013 letter was sent), PennyMac orally informed Plaintiff that the Veteran's Administration was the creditor (ECF No. 12 at 7-8, ¶¶ 18-20).

a Motion to Dismiss. *See Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995) ("Legal labels characterizing a claim cannot, standing alone, determine whether it fails to meet this extremely modest standard.").

If PennyMac orally informed Plaintiff that the Veterans Administration owned the loan in or around December 2013, and such advice was incorrect, then that could have and should have been a claim for Plaintiff to assert against *PennyMac* in the Georgia Action. Simply because information that Defendant provided to Plaintiff in the April 21, 2014 Letter allegedly contradicted information previously supplied to Plaintiff by a separate entity (PennyMac) does not mean that the creditor was "misidentified" in the April 21, 2014 Letter as prohibited by the FDCPA because "'[c]onclusory allegations regarding the legal effect of the facts alleged' need not be accepted." *Blagogee v. Equity Trustees, LLC*, No. 1:10-CV-13(GBL-IDD), 2010 WL 2933963, at *3 (E.D. Va. July 26, 2010) (quoting *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995)).

It is well-established that the least sophisticated consumer standard applies to claimed violations of Sections 1692e and 1692g. Pursuant to this standard, "a statement is false or misleading if 'it can be reasonably read to have two or more meanings, one of which is inaccurate'. . . . The test requires a court to consider a statement's 'capacity . . . to mislead,' such that 'evidence of actual deception is unnecessary.'" *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006); *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996)) (internal citations omitted). In the April 21, 2014 letter, the specific statement regarding the identity of the creditor is "[t]he creditor to whom the debt is owed is PennyMac Loan Services, LLC." ECF No. 12, attach. 1 (Exhibit A). Although the least sophisticated consumer test "protect[s] naive

43

consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2nd Cir. 1993)). The Court is unclear how this statement ("the creditor to whom the debt is owed is PennyMac Loan Services, LLC") by Defendant could be misleading to Plaintiff or "capable of two or more meanings." *See Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011) (citations omitted). As the Fourth Circuit has observed, "[t]hough the FDCPA does not necessarily require specific language to communicate the identity of the creditor to whom the debt is owed, such information 'must be conveyed effectively to the debtor.'" *Smith v. Cohn, Goldberg & Deutsch, LLC*, No. CV RDB-17-2291, 2017 WL 4921695, at *3 (D. Md. Oct. 31, 2017) (quoting *Miller v. Payco–Gen. Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991)).

Notwithstanding the Court's rejection of Plaintiff's unwarranted conclusion that the statement was misleading, the Court finds that it was not material or capable of two meanings because Plaintiff immediately made efforts to discern the amount of debt and current creditor using the information provided by Defendant in the April 21, 2014 letter. *Fariasantos v. Rosenberg & Assocs., LLC*, 2 F. Supp. 3d 813, 818–19 (E.D. Va. 2014) ("Moreover, as noted previously, the statement must affect a consumer's ability to make intelligent decisions with respect to the alleged debt."). As discussed at length in disposing of the claimed FDCPA violations by misstating the amount of debt, the Court finds that any alleged misrepresentation of the creditor was not a violation of Sections 1692g(a)(2) or 1692e. *See* Part III.C.2(a), *supra*.

Although a misstatement under FDCPA does not necessarily require factual incorrectness, the Court finds that Defendant's statement regarding the creditor's identity were

not false. In support of his Opposition, Plaintiff has attached a document that purports to be the Assignment of Mortgage, from Bank of America to PennyMac Loan Services, LLC via Mortgage Electronic Registration Systems, Inc., ("MERS") as nominee for Bank of America, which occurred on May 30, 2014 based on the date provided by this document. ECF No. 49. Therein, MERS transferred and assigned to PennyMac Loan Services, LLC all rights, title, and interest to the Deed of Trust which secured the Promissory Note. ECF No. 49. Thus, the Court can conclude that as of May 30, 2014, PennyMac Loan Services, LLC was the correct creditor and holder of the Promissory Note. Although the Court acknowledges that the complained of correspondence is dated April 21, 2014 (over one month *prior* to the May 30, 2014 Assignment of Mortgage date), the Court finds that the timing of this Assignment of Mortgage is not immediately dispositive of the contested issue at hand as suggested (for different reasons) by both Plaintiff and Defendant. *See* ECF No. 43 at 22-23; ECF No. 47 at 21.

Instead, the Court finds that the content of the Assignment of Mortgage (ECF No. 49) supplies the legal basis to render Plaintiff's contention that as of April 21, 2014, PennyMac Loan Services was the incorrectly identified creditor (or that the Veterans Administration was the correct creditor) impossible. This Assignment of Mortgage transfers the ownership interests in the subject Deed of Trust from Bank of America to PennyMac Loan Services, LLC. *See* ECF No. 49. Plaintiff concedes that Bank of America is the original creditor (evidenced by his attempts to rescind the loan via notice sent to Bank of America, as discussed in Part III.C.2(b), *supra*. Thus, for the Complaint's alleged sequence of events to be true (and resultant April 21, 2014 "misidentification" of the creditor), there would need to be an intervening entity between the ownership of Bank of America and the ownership of PennyMac, and the presence and/or participation of such intermediary would be evident from the four corners of the document. *See*

*Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 624 (4th Cir. 2011) ("Of course Horvath is right that "deeds of trust and their underlying notes are 'separate and distinct' documents'. . . . But it is equally clear that 'notes and contemporaneous written agreements executed as part of the *same transaction* will be construed together as forming one contract.' Where 'neither document varies or contradicts the terms of the other, [the] terms of one document which clearly contemplate the application of terms in the other may be viewed together as representing the complete agreement of the parties.' Here, that 'agreement' is that the note and deed of trust form part of one transaction, that the note may be transferred freely with the purchaser or recipient inheriting full rights to enforce, and that the deed of trust follows the note.") (quoting *Va. Hous. Dev. Auth. v. Fox Run Ltd. P'ship*, 255 Va. 356, 497 S.E.2d 747, 752-53 (1998) (quoting *Jim Carpenter Co. v. Potts*, 255 Va. 147, 495 S.E.2d 828, 833 n. 5 (1998); *Richmond Postal Credit Union v. Booker*, 170 Va. 129, 195 S.E. 663, 665 (1938))) (internal citations omitted) (alternations and emphasis in original).

Virginia law provides that within six (6) months after the date of a sale made via non-judicial foreclosure

> the trustee shall return an account of the sale to the commissioner of accounts of the circuit court where the instrument was first recorded. After recording any trustee's deed, the trustee shall promptly deliver to the commissioner of accounts a copy of the deed. The date of sale is the date specified in the notice of sale, or any postponement thereof, as required by subsection A of § 55-59.1. The commissioner of accounts shall state, settle, and report to the court an account of the transactions of the trustee, which shall be recorded as other fiduciary reports. Any trustee failing to comply with this section shall forfeit his commissions on such sale, unless such commissions are allowed by the court.

Va. Code Ann. § 64.2-1309(A). Here, it is undisputed that Defendant caused the sale of the Property on or about August 25, 2014. *See* ECF No. 12 (Complaint) at 9, ¶ 26; ECF No. 44

(Defendant's Answer) at 7, ¶ 27. Defendant represents (without providing any corroborating documentation) that the Gloucester Commissioner of Accounts approved the sale on or about March 16, 2015. *See* ECF No. 43 at 5 ("On or about March 16, 2015, the Commissioner of Accounts advised the Gloucester County Circuit Court that he had stated his account as to the Property and the foreclosure sale was approved."). Despite the lack of further corroboration by Defendant to support this assertion, it does appear that at some point, Defendant, in its capacity as Substitute Trustee, submitted an accounting to the Clerk of the Gloucester Circuit Court pursuant to Va. Code Ann. § 64.2-1309(A). In support of his Opposition to Defendant's Motion to Dismiss, Plaintiff filed a document which he identifies as "Sale Summary" in his electronic filing. ECF No. 57. This undated "Sale Summary" appears to include a statement of the costs incurred by Substitute Trustee in effectuating non-judicial foreclosure of the Property, a statement of the bid price, and concludes with a certification by the Substitute Trustee that "ALL TAXES ASSESSED OR ASSESSABLE HAVE BEEN PAID OR PROVIDED FOR" and "NOTICE OF SALE PROVIDED OWNERS AND SUBORDINATE LIEN OR, IF ANY, AS REQUIRED BY STATUTE." ECF No. 57 (capitalization in original). Notably, this "Sale Summary" includes an entry for "Commissioner of Accounts" with a corresponding cost of Three Hundred Dollars ($300.00), as well as entries and corresponding costs for "CLERK, GLOUCESTER CIRCUIT COURT RECORDATION OF ACCOUNTING, RECORDATION OF SUBSTITUTION DOCUMENT, [and] GRANTOR'S TAX." ECF No. 57. Because neither party disputes the authenticity of the document (ECF No. 57), the Court presumes that it to be what it purports, and notably finds that "PENNYMAC LOAN SERVICES, LLC" is listed as the Creditor to whom the credit on the Note is owed.

Although the Court assumes as true all facts proffered by Plaintiff and views them in a

light most favorable to him, Plaintiff's allegations of violations of FDCPA on the basis that Defendant misidentified the loan creditor in its April 21, 2014 Letter do not survive the deferential Motion to Dismiss standard. Based on its review of the Record and other permissible sources of information, the Court finds that Plaintiff's claimed violations of FDCPA regarding the identification of the creditor are only plausible if Plaintiff can establish that between December 12, 2013 and May 29, 2014, a different entity besides PennyMac Loan Services became the creditor and holder of the Promissory Note. As detailed herein, the Court finds this to be implausible and requires the assumption of unwarranted inferences in Plaintiff's favor. Thus, Defendant's Motion to Dismiss Count I is **GRANTED with prejudice** as to these specific grounds.

### 3. Count II – Class Action FDCPA Violations

Count II of the Complaint purports to assert a Class Action claim based on Defendant's alleged violations of the FDCPA committed against a class of individuals, which are substantially the same as the alleged violations claimed in Count I. Specifically, Plaintiff alleges that Defendant violated the FDCPA by sending to Plaintiff and other similarly situated individuals, correspondences that misidentified the creditor and misrepresented the amount of debt due. Because the Court has already determined that these allegations do not establish that Plaintiff himself has stated a valid claim, he has no claim to assert on behalf of a class. Thus, this specific inquiry requires no further discussion as it pertains to the purported Class Action claim.

However, even if Plaintiff had sufficiently pled a cause of action, dismissal of Plaintiff's purported Class Action claims in Count II is required due to Plaintiff's total failure to properly assert a class action, both procedurally and substantively. In support of Count II of the operative

Complaint, Plaintiff states that "[m]ore precise information concerning the size and identification of class members will be obtained as set forth in Plaintiffs [sic] subsequent Motion for Class Certification." ECF No. 12 at 16, ¶ 49. As of the date of this Opinion and Order, no such Motion has ever been filed, despite promises that such is forthcoming. *See* ECF No. 47 at 23 (urging as recently as September 8, 2017 that "the Court should await any the [sic] filing of a motion for class certification prior to addressing the propriety of this case proceeding as a class action."). This is problematic for several reasons. First, Fed. R. Civ. P. 23(c)(1) requires that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Such an order must "define the class and the class claims, issues, or defenses, and must appoint class counsel." Fed. R. Civ. P. 23(c)(1)(B). Plaintiff has failed to make a request for class certification in the form of a motion, or by alleging enough facts in the Complaint such that the Court can determine whether class certification is appropriate. It is axiomatic that "[t]he party seeking class certification bears the burden of establishing that the action meets the requirements of Rule 23. *Morris v. Wachovia Securities, Inc.*, 223 F.R.D. 284, 291 (E.D. Va. 2004) (citing *In re A.H. Robins Company, Incorporated*, 880 F.2d 709, 728 (4th Cir. 1989), cert. denied sub nom., *Anderson v. Aetna Casualty and Surety Company*, 493 U.S. 959 (1989) (internal quotation marks omitted)).

### a. Rule 23(a)

Fed. R. Civ. P. 23(a) sets forth the four threshold requirements that must be satisfied before the Court can proceed to the next step of determining whether an action is certified as a class action:

> (1) numerosity . . . requires that the class be so large as to make joinder of all class members impracticable; (2) commonality requires that there exist questions

of law or fact common to the purported class members; (3) typicality necessitates that the claims of the named plaintiff must be typical of those of the class; and (4) adequacy of representation mandates that the class representative be capable of fairly and adequately protecting the interests of absent class members during the proceedings and at trial.

*Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 292 (E.D. Va. 2004) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). Although "[i]t is the plaintiffs' burden to demonstrate compliance with Rule 23 . . . the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). In discharging its duty, the Court is convinced that Plaintiff has failed to carry his burden.

### (i) Numerosity

With respect to the first element of numerosity, Plaintiff baldly asserts that "[t]he persons included in each Class set out above are so numerous that joinder of all parties is impractical" and "[o]n information and belief there are more than five hundred (500) members of the Proposed Class." ECF No. 12, ¶¶ 48-49. Plaintiff has offered literally no factual support to buttress this statement. While a plaintiff seeking class certification is not required to provide the precise number of putative class members at this stage, they are required to provide a good faith estimate. *See* Harris v. Rainey, 299 F.R.D. 486, 489 (W.D. Va. 2014) (finding a good faith effort when estimate was made based on U.S. Census data) (citing *Fitzgerald v. Schweiker*, 538 F.Supp. 992, 1000 (D. Md. 1982) ("Plaintiffs' good faith estimate of the size of the class clearly is sufficient to establish numerosity.")). Plaintiff's estimate lacks any good faith support.

### (ii) Commonality

In regards to the second element of "commonality," Plaintiff states that, among the proposed class members, there are common questions of law and fact, including

50

"whether Defendant violated 15 U.S.C. §§ 1692(e) and 1692(g)(a)(2) by falsely identifying the creditor as defined in the FDCPA" and "whether Defendant violated 15 U.S.C. §§ 1692(e) and 1692(g)(a)(1) by failing to state the correct amount due as of the date the Letter was sent." ECF No. 12, ¶ 52. Plaintiff's failure to provide any further information renders the Court unable to make a finding of commonality.

### (iii) Typicality

Where the commonality requirement focuses on the claims of the class as a whole, the typicality requirement is focused on the claims of the named plaintiffs. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). Concerning the "typicality" requirement, Plaintiff baldly states that "[t]he claims of class representative [Plaintiff] are typical of the claims of the Proposed Class." ECF No. 12, ¶ 51. Case law from this District provides that to establish typicality, "the class representatives must show: (1) that their interests are squarely aligned with the interests of the class members; and, (2) that their claims arise from the same events or course of conduct and are premised on the same legal theories as the claims of the class members." *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003) (citing *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003); *McGlothlin v. Connors*, 142 F.R.D. 626, 633 (W.D.Va.1992)). Plaintiff's bare assertions without any substantiation render the Court unable to sufficiently analyze this factor.

### (iv) Adequacy of Representation

For the fourth and final element, which requires "adequacy of representation," Plaintiff states that he "has retained counsel with experience in complex litigation and consumer protections statutes" and that "[t]he representative party and their [sic] counsel will take those actions necessary to protect the interests of the class members." ECF No. 12, ¶ 56, 55. Plaintiff

provided no further support for this conclusion, and, in light of the significant procedural and substantive deficiencies in the Complaint, and indeed, the entire Record, this assertion has not been established. "The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 568 (E.D. Va. 2016) (quoting *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 239 (S.D.W. Va. 2005)). The adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are "qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567–68 (E.D. Va. 2016) (quoting *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D.W. Va. 2005)). Because Plaintiff has failed to file a Motion to Certify the Class, or to provide a Declaration from his counsel, or any other information at all, the Court is unable to make an affirmative finding of adequacy.

### b. Rule 23(b)

Further, even if Plaintiff could have met the four threshold requirements under Fed. R. Civ. P. 23(a) by amending his Complaint again, the Court must then consider whether Plaintiff's purported class action claim could satisfy at least one of the additional requirements of Fed. R. Civ. P. 23(b). It appears that Plaintiff seeks class certification under Rule 23(b)(1)(A), 23(b)(1)(B), 23(b)(2), or 23(b)(3).[25] ECF No. 12, ¶¶ 47, 57-59. That rule provides, in pertinent part:

> A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:

---

[25] While Plaintiff references in ¶47 of the operative Complaint each of these four provisions of Rule 23 as authorization for class certification, he references only 23(b)(1)(A), 23(b)(1)(B) and 23(b)(2) later in Count II when articulating the basis for certification, omitting any reference to 23(b)(3). *See* ECF No. 12, ¶¶ 57-59.

> **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> **(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). As the Supreme Court has advised,

> Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)."

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (quoting Kaplan, Continuing Work 388 (footnotes omitted)). Plaintiff's allegations in no way implicate a situation where members of a class have experienced incompatible standards of conduct by Defendant, and thus Rule 23(b)(1)(A) is not a proper vehicle for the harm Plaintiff alleges.

In comparison, "Rule 23(b)(1)(B) includes, for example, 'limited fund' cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims."

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citing Advisory Committee's Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C. App., pp. 696–97). As with Subsection (b)(1)(A), Plaintiff's allegations of Defendant's violations of FDCPA do not meet the scenario imagined by Subsection (b)(1)(B) such that class certification is warranted.

Plaintiff's allegations do not fit the parameters described by "Rule 23(b)(2) [which] permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (quoting Adv. Comm. Notes, 28 U.S.C.App., p. 697; citing Kaplan, Continuing Work 389 (subdivision (b)(2) "build[s] on experience mainly, but not exclusively, in the civil rights field")). Furthermore, Plaintiff's attempt at class certification under Fed. R. Civ. P. 23(b)(2) is inappropriate because "[i]t is a monetary judgment that the plaintiffs seek and that is obvious from the phrasing of their prayer. Such an action is not suitable for treatment as a class action under Rule 23(b)(2)." *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 596 (4th Cir. 1976) (citations omitted).

Finally, Plaintiff has not articulated a plausible claim under Rule 23(b)(3). In describing the 1966 amendments that created the third type of class under Rule 23(b)(3), the Supreme Court explained, "Rule 23(b)(3) added to the complex-litigation arsenal class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614–15 (1997) (citing 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1777, p. 517 (2d ed. 1986); Kaplan, Continuing Work 379–400). Courts have found that this type of class certification is appropriate where the "actual damages of each class member are small. In this

circumstance, the parties have little incentive—and quite possibly lack the means—to litigate their claims individually, and a class action best resolves the issue by permitting the class to air their common grievances in a single proceeding." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 501 (D. Md. 1998) (granting Rule 23(b)(3) class certification for where plaintiffs and putative class members allegedly suffered the same type of injury - receipt of allegedly wrongful notices of intent to foreclose - based on the same set of facts - sending the notices - which produces the same legal theory - a violation of the FDCPA). As Wright, Miller & Kane have noted, "Rule 23(b)(3) sets out two prerequisites for the maintenance of a class action, neither of which is applicable in actions under subdivision (b)(1) and (b)(2). These requirements reflect the fact that special caution must be exercised in class actions of this type because of the loose affiliation among the class members, which is thought to magnify the risks inherent in any representative action." Wright, Miller & Kane, 7A Federal Practice & Procedure § 1777, at 518 (3d ed.). While this might be the only part of Rule 23(b) which conceivably might be applicable, Plaintiff simply has failed to provide sufficient facts to support such a contention.

Notwithstanding the Fourth Circuit policy "to give Rule 23 a liberal rather than restrictive construction," Plaintiff has utterly failed to meet his burden with respect to both the threshold requirements for class certification enunciated in Fed. R. Civ. P. 23(a), and the secondary requirements provided in subsection (b) of the Rule. *See Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 290–91 (E.D. Va. 2004) ("A party seeking class certification must first show that the action will meet all four requirements of Rule 23(a). Then, if those threshold requirements are met, the moving party also has the burden of showing that the action will meet the requirements of at least one part of Rule 23(b).") (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614 (1997)). Based upon these facts, the Court declines to exercise its discretion to certify this

purported class action. *See Fariasantos v. Rosenberg & Assocs., LLC*, 303 F.R.D. 272, 275 (E.D. Va. 2014) (explaining that "[t]he Court has the discretion to certify a class or not . . .") (citing *Cent. Wesleyan College v. W.R. Grace Co.*, 6 F.3d 177, 185 (4th Cir. 1993); *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006); *Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158, 162 (D. Md. 2008); *Meyer v. Citizens & Southern Nat. Bank*, 106 F.R.D. 356, 360 (M.D. Ga. 1985); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 n. 7 (5th Cir. 2004), *cert. denied*, 543 U.S. 870 (2004)).

Accordingly, Defendant's Motion to Dismiss as to Count II, "class allegations" is **GRANTED with prejudice**.

### IV. CONCLUSION

For the reasons stated herein, the Complaint is insufficient to survive a Motion to Dismiss. To the extent that Plaintiff's allegations move beyond unsupported legal conclusions, the alleged facts do not support Plaintiff's claimed FDCPA violations. *See Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995) ("Legal labels characterizing a claim cannot, standing alone, determine whether it fails to meet this extremely modest standard."). Accordingly, Defendant's Renewed Motion to Dismiss, ECF No. 43, is **GRANTED**, and the Complaint, ECF No. 12, is **DISMISSED WITH PREJUDICE**. Further, Defendant's outstanding Motion to Compel Discovery, ECF No. 62, is **DISMISSED AS MOOT**.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Newport News, Virginia
December 8, 2017